IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UBER TECHNOLOGIES, INC.
and UBER USA, LLC,

      Plaintiffs,

v.                                       No. 20-cv-463

DENNIS MURPHY, as Personal Representative of the
Wrongful Death Estate of James Porter, deceased,
MONICA SALAZAR, and JIMMY PORTER,

      Defendants.

## COMPLAINT TO COMPEL ARBITRATION

Plaintiff Uber Technologies, Inc. and Uber USA, LLC (herein collectively referred to at times as ("Uber"), by and through counsel, Modrall, Sperling, Roehl, Harris & Sisk, P.A. (Tim L. Fields and Nathan T. Nieman) for its cause of action, alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Uber Technologies, Inc. is a Delaware corporation with its principal place of business at 1455 Market Street, San Francisco, California.

2.     Uber Technologies, Inc. is the sole member of Uber USA, LLC, which is a Delaware limited liability company.

3.     Defendant Dennis Murphy is a New Mexico citizen and Personal Representative of the estate of James Porter for purposes of asserting a wrongful death claim against Plaintiff, currently captioned as *Dennis Murphy, as Personal Representative of the Wrongful Death Estate of James Porter, deceased et al. v. Clayton Benedict et al.*,[1] Case Number D-101-CV-2019-

---

[1] Aaron Garrett was initially named as the Personal Representative of Mr. Porter's estate. However, the Personal Representative of Mr. Porter's estate has since been changed to Dennis Murphy..

00898, in the First Judicial District Court, Santa Fe County, New Mexico ("State Court Action"). A copy of the Amended Complaint is attached hereto as **Exhibit 1**.

4.      James Porter, deceased, was a New Mexico citizen at the time of his death and at all times relevant to this Complaint.

5.      Defendant Monica Salazar is a citizen of the State of New Mexico.

6.      Defendant Jimmy Porter is a citizen of the State of New Mexico.

7.      This Court has jurisdiction over the subject matter of this action and the parties pursuant to 28 U.S.C. § 1332(a)(1) and 9 U.S.C. § 4 because there is complete diversity of citizenship between the parties and, as the underlying claim includes a wrongful death dispute and a claim for punitive damages, the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.      This judicial district is a proper venue under 28 U.S.C. § 1391 because the decedent was a New Mexico resident, Defendants reside and are subject to service of process in this district, and the events or omissions giving rise to the claims asserted in this action occurred in this district.

## **FACTUAL BACKGROUND**

9.      On or about March 17, 2019, James Porter utilized the rider version of the Uber application ("Rider App") to request a ride from a driver using the Uber application. Defendants allege in the State Court Action that there was an altercation between Mr. Porter and the independent driver Clayton Benedict, which resulted in Mr. Porter's death. **Exhibit 1 at ¶¶ 155-195.**

10.     Before Mr. Porter could use Uber's Rider App, he was required to register with Uber, via the Rider App, and agree to Uber's U.S. Terms of Use ("Terms of Use"). *See* Declaration of Ryan Buoscio and Terms of Use, attached hereto as **Exhibit 2**.

11.     The process through which Mr. Porter registered through the Rider App and agreed to the Terms of Use is set forth in the Declaration of Kyle Gabriel, attached hereto as **Exhibit 3**,

12.     If Mr. Porter did not agree with Uber's Terms of Use, then he could have declined to complete the registration process and thereby decline to use Uber's services.

13.     As a user of the Rider App, Mr. Porter agreed to Uber's Terms of Use when he registered an account with Uber in 2015 and proceeded to use Uber's Services. **Exhibit 3 at ¶¶ 3-4** (and accompanying exhibits).

14.     Uber updated its Terms of Use in November of 2016, and sent the Terms of Use to Mr. Porter via email on November 22, 2016.  **Exhibit 2 at ¶¶ 11-19.**

15.     Mr. Porter opened the email and agreed to the updated Terms of Use through his continued use of the Rider App. **Exhibit 2 at ¶¶ 11-12.**

16.     Contained within the Terms of Use[2] is a mutual agreement to resolve any disputes arising out of the use of Uber's Services through final and binding arbitration. The very first section of the Terms of Use prominently advises the user to carefully review the Arbitration Agreement contained therein:

> **IMPORTANT: PLEASE REVIEW THE ARBITRATION AGREEMENT SET FORTH BELOW CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH UBER ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION. BY ENTERING THIS AGREEMENT, YOU EXPRESSLY ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND ALL OF THE TERMS OF THIS**

---

[2] Plaintiff will, hereinafter, refer to the Terms of Use effective November 21, 2016.  However, the Terms of Use effective prior to November 21, 2016, also contained a mandatory arbitration provision.

**AGREEMENT AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT DECISION.**

**Exhibit 2-E at § 1** (bolded and all caps typeface in original).

17.     The Arbitration Agreement is then set forth in Section 2 of the Terms of Use, and is unambiguously titled "Arbitration Agreement." **Exhibit 2-E at § 2** (hereafter referred to as "Arbitration Agreement").

18.     The very first sentence of the Arbitration Agreement provides: "**By agreeing to the Terms, you agree that you are required to resolve any claim that you may have against Uber on an individual basis in arbitration, as set forth in this Arbitration Agreement.**" **Exhibit 2-E at § 2** (bolded typeface in original).

19.     Section 2.I of the Arbitration Agreement, titled "Agreement to Binding Arbitration Between You and Uber," then provides in relevant part:

> **You and Uber agree that any dispute, claim or controversy arising out of or relating to** (a) these Terms or the existence, breach, termination, enforcement, interpretation or validity thereof, or (b) **your access to or use of the Services at any time**, whether before or after the date you agreed to the Terms, **will be settled by binding arbitration between you and Uber, and not in a court of law**.

> **You acknowledge and agree that you and Uber are each waiving the right to a trial by jury** . . . .

**Exhibit 2-E at § 2** (emphasis added).

20.     The "Services" covered by the Arbitration Agreement are defined to include "mobile applications and related services . . . which enable users to arrange and schedule transportation…including with third party providers of such services…." **Exhibit 2-E at § 3**.

21.     The Arbitration Agreement next sets forth the governing rules, providing that arbitration is to be administered in accordance with the American Arbitration

Association's ("AAA") Consumer Arbitration Rules. **Exhibit 2-E at § 2.** The Arbitration

Agreement also mandates that the Arbitrator, not a court or agency, shall be responsible

for determining all threshold issues of arbitrability:

> The arbitration will be administered by the American Arbitration Association
> ("AAA") in accordance with the AAA's Consumer Arbitration Rules and the
> Supplementary Procedures for Consumer Related Disputes (the "AAA Rules")
> then in effect, except as modified by this Arbitration Agreement. . . .
>
> **The parties agree that the arbitrator ("Arbitrator"), and not any federal,
> state, or local court or agency, shall have exclusive authority to resolve any
> disputes relating to the interpretation, applicability, enforceability or
> formation of this Arbitration Agreement**, including any claim that all or any
> part of this Arbitration Agreement is void or voidable. **The Arbitrator shall also
> be responsible for determining all threshold arbitrability issues**, including
> issues relating to whether the Terms are unconscionable or illusory and any
> defense to arbitration, including waiver, delay, laches, or estoppel.

*Id.* (emphasis added).

22.     Finally, the Arbitration Agreement contains a choice-of-law provision,

providing that the agreement shall be governed by the Federal Arbitration Act, 9 U.S.C. §

1 et seq. ("FAA") as permitted by law:

> Notwithstanding any choice of law or other provision in the Terms, the parties
> agree and acknowledge that this Arbitration Agreement evidences a transaction
> involving interstate commerce and that the Federal Arbitration Act, 9 U.S.C. § 1
> et seq. ("FAA"), will govern its interpretation and enforcement and proceedings
> pursuant thereto. It is the intent of the parties that the FAA and AAA Rules shall
> preempt all state laws to the fullest extent permitted by law.

**Exhibit 2-E at § 2.**

23.     Dennis Murphy was appointed as Mr. Porter's personal representative for the

purpose of pursuing a wrongful claim against Plaintiff. *See* Order for Informal Appointment of

Wrongful Death Personal Representative, attached hereto as **Exhibit 4**.

24.     On February 12, 2020, Defendants filed an Amended Complaint in the State

Court Action. *See* **Exhibit 1**. In the State Court Action, Defendants assert multiple claims against

Uber, current and former Uber officers, and allege that independent driver Mr. Clayton Benedict

was acting as an employee/agent of Uber at the time of the altercation with Mr. Porter.  All of the

Defendants' claims relate and arise from the services that Mr. Porter requested through the Rider

App on March 17, 2019. *Id.*, ¶¶ **166-195.**

## CAUSE OF ACTION TO COMPEL ARBITRATION
**(Federal Arbitration Act, 9 U.S.C. § 4)**

25.    Plaintiff incorporates by reference the allegations set forth above, as if set forth

fully herein.

26.    The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, mandates arbitration of

claims that are subject to a written arbitration agreement and that affect interstate commerce.

Specifically, the FAA requires arbitration where (a) there is a valid, written arbitration

agreement, and (b) a dispute is within the scope of the agreement. Section 2 of the FAA provides

that:

> A written provision in any . . . contract evidencing a transaction
> involving commerce to settle by arbitration a controversy
> thereafter arising out of such contract or transaction, or the refusal
> to perform the whole or any part thereof, . . . **shall be valid,
> irrevocable, and enforceable**, save upon such grounds as exist at
> law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added). Section 4 of the FAA further provides that:

> A party aggrieved by the alleged failure, neglect, or refusal of
> another to arbitrate under a written agreement for arbitration may
> petition any United States district court which, save for such
> agreement, would have jurisdiction under title 28, in a civil action
> or in admiralty of the subject matter of a suit arising out of the
> controversy between the parties, for an order directing that such
> arbitration proceed in the manner provided for in such agreement. .
> . .  The court shall hear the parties, and upon being satisfied that
> the making of the agreement for arbitration or the failure to comply
> therewith is not in issue, the court shall make an order directing the
> parties to proceed to arbitration in accordance with the terms of the
> agreement.

9 U.S.C. § 4. In actions involving written arbitration agreements, the FAA requires that such

actions be stayed pending resolution of the arbitration process:

> If any suit or proceeding be brought in any of the courts of the
> United States upon any issue referable to arbitration under an
> agreement in writing for such arbitration, the court in which such
> suit is pending, upon being satisfied that the issue involved in such
> suit or proceeding is referable to arbitration under such an
> agreement, shall on application of one of the parties stay the trial
> of the action until such arbitration has been had in accordance with
> the terms of the agreement, providing the applicant for the stay is
> not in default in proceeding with such arbitration.

9 U.S.C. § 3.

27.     As the personal representative of Mr. Porter's estate, Defendant Murphy now

stands in the shoes of Mr. Porter insofar as he was a party to, and legally obligated to comply

with, the Arbitration Agreement included in Uber's Terms of Use. Therefore, Defendant is

bound to resolve all disputes, including "any dispute, claim or controversy arising out of or

relating to . . . your [(Mr. Porter's)] access to or use of the Services at any time." Exhibit 2 at §

2.I.

28.     Defendants Monica Salazar's and Jimmy Porter's loss of consortium claims are

premised upon the Services provided to James Porter and are subject to mandatory arbitration.

29.     Defendants' causes of action against Uber in the State Court Action, including

any related causes of action which Defendants intends to assert against Plaintiff, Uber USA,

LLC, or Uber Technologies, Inc. or any current or former officer, or purported agent or

employee of any such entity in the State Court Action, are within the scope of, and subject to, the

Arbitration Agreement. The Arbitration Agreement bars the assertion of these claims in any civil

action and, instead, requires that they be resolved by arbitration. Defendants' filing of the State

Court Action is in direct violation of the Arbitration Agreement and, thus, a breach of the agreement and Terms of Use.

30.     Defendants' claims asserted in the State Court Action are subject to the Arbitration Agreement.

31.     Therefore, pursuant to the Arbitration Agreement, the FAA, and applicable law, Plaintiff is entitled to an order compelling Defendants to submit their claims to arbitration.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Uber Technologies, Inc. and Uber USA, LLC are  entitled to, and respectfully request a judgement ordering Defendants to submit their claims against Plaintiff, Uber USA, LLC, or Uber Technologies, Inc. (or any affiliate or past or present employee, officer or director of the same) to arbitration as directed in the Arbitration Agreement, and for such other relief as the Court deems just and proper.

Respectfully submitted,

MODRALL, SPERLING, ROEHL, HARRIS
 & SISK, P.A.

By: */s/ Nathan T. Nieman*
      Tim L. Fields
      Nathan T. Nieman
      Jennifer A. Kittleson
      P.O. Box 2168
      500 Fourth Street NW, Suite 1000 (87102)
      Albuquerque, New Mexico  87103-2168
      Telephone: 505-848-1800
      tlf@modrall.com
      ntn@modrall.com
      jak@modrall.com
      *Attorneys for Uber Technologies, Inc. and Uber USA,*
      *LLC*

W3751718.DOC